CHARLES ZADAK *et al.*, Plaintiffs, *v.* DALE LYNN CANNON *et al.*, Defendants —(SUNBEAM CORPORATION, Third-Party Plaintiff-Appellee, *v.* CYCLONE BLOW PIPE COMPANY, Third-Party Defendant-Appellant.)

(No. 56363;

First District (5th Division)—January 11, 1974.

Kralovec, Sweeney, Marquard & Doyle, of Chicago (Edward V. Scoby, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Karl M. Tippet, and E. Michael Kelly, of counsel), for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

Charles Zadak, an employee of Cyclone Blow Pipe Company, sued Sunbeam Corporation and its employee Dale Cannon for injuries which Zadak suffered while working at the Sunbeam plant installing equipment which Sunbeam had purchased from Cyclone under a written purchase order. Zadak alleged that he was injured either negligently or wilfully by Cannon. Sunbeam filed a third-party complaint against Cyclone on the basis of an indemnification provision which was included among the

terms and conditions of the purchase order which Cyclone accepted and pursuant to which it was installing the equipment ordered.

The purchase order provides that Sunbeam gives the seller the order
> "* * * on the express terms and conditions stated herein and on the back of this order, all of which conditions are in integral part hereof and shall be considered as being incorporated herein at this place, in the same manner as though so written or printed here."

The order also states that:
> "Shipment against this order shall be deemed acceptance by Seller of each of such terms and conditions * * *."

Two of the conditions are relevant:
> "(k) * * * seller [Cyclone] also will indemnify and hold harmless the buyer [Sunbeam] of and from any and all suits, claims, liens, damages, taxes or demands whatsoever *arising out of any such work covered by, necessitated or performed under* this order. (Emphasis added.)
>
> (1) In consideration of the acceptance of this order, seller agrees to defend, protect and save harmless the buyer, or any of its customers, against all suits at law or in equity * * * or for any other actual or alleged injury to property or person, and to defend or assist in the defense of any suit or action which may be brought against the buyer * * * by reason of * * * any other claim of any kind resulting from the purchase, sale or use of the goods, commodities, products and items covered by this order."

Cyclone has admitted that the purchase order and conditions were in effect, but has denied their applicability to the facts of this case. In the trial court, Sunbeam moved for judgment on the pleadings; the trial court, in effect, allowed its motion by granting summary judgment in its favor.

Cyclone contends that *Westinghouse Electric Elevator Co. v. La Salle Monroe Bldg. Corp.*, 395 Ill. 429, 70 N.E.2d 604, is controlling in this case. In *Westinghouse*, the court said that although it is a general rule that unless a contract is ambiguous, its meaning must be determined from the words used, it is also true that
> "* * * an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract, * * *." 395 Ill. at 433.

Cyclone also cites later cases which it suggests adhere to the *Westinghouse* doctrine, including *Li Petri v. Turner Construction Co.*, 36 Ill.2d

597, 224 N.E.2d 841; *Halperin v. Darling & Co.*, 80 Ill.App.2d 353, 225 N.E.2d 92; *Ford Motor Co. v. Commissary, Inc.*, 286 F.Supp. 229 (N.D. Ill.); and *Chicago & Northwestern Ry. Co. v. Chicago Packaged Fuel Co.*, 195 F.2d 467 (7th Cir.), *cert. denied* 344 U.S. 832, 97 L.Ed. 648, 73 S.Ct. 39.

However, we believe that *Westinghouse* and the later cases do not support Cyclone's position. The language of the contract in *Westinghouse* provided indemnification to the owner by the contractor only for damages

> "* * * arising out of any acts or omissions by [the contractor], its agents, servants or employees in the course of any work done in connection with any matters set out in the contract." 395 Ill. at 433.

The contract did not refer to any negligence of the owner himself.

In *Li Petri*, broad language providing for indemnification of the contractor by the subcontractor was qualified by language in the same contract which said the subcontractor would indemnify the general contractor for losses occurring in connection with the use by the subcontractor of certain equipment rented to the general contractor. The court found this clause did not apply to injury caused by negligent maintenance of this equipment. In *Halperin*, the court noted that contracts of indemnity against one's own negligence are generally regarded as valid and enforceable, but found that the language concerning indemnification meant that the lessee would indemnify the lessor for any loss arising out of "the operation" of the equipment leased; and that no intention was manifested in the contract to enable the lessor to hold the lessee harmless from damages arising out of the lessee's negligence in "the maintenance" of the leased equipment. The court noted that the contract provided that the lessee would retain all responsibility for the active maintenance of the leased equipment. In *Ford*, the court's analysis of the language of the indemnification clause was similar to that in *Halperin;* also, the contract included language concerning equipment maintenance which qualified that of the broad indemnification clause. In *Chicago Packaged Fuel*, the licensee agreed to indemnify the licensor for all loss arising from the use of the licensed equipment. The court found that the proximate cause of the accident was not the equipment involved in the indemnification provision.

Cyclone argued further that a recent Illinois statute (Ill. Rev. Stat. 1971, ch. 29, par. 61) has declared that agreements in construction contracts indemnifying one against his own negligence are against public policy and therefore void. Cyclone says that this statute should be given consideration although it has prospective application only. We believe

that in light of the recent authority cited below, this point is without merit.

It is true that in *Tartar v. Maxon Construction Co.*, 3 Ill.App.3d 352, 277 N.E.2d 715, the appellate court did suggest that the rule of strict construction whereby a tortfeasor seeks to excuse or transfer liability for his wrongful act is a reflection of the public policy now embodied in the new statute which prospectively outlaws such indemnity provisions. The Supreme Court affirmed the appellate court's decision in *Tatar v. Maxon Construction Co.*, 54 Ill.2d 64, 294 N.E.2d 272. However, the Supreme Court did not mention the new statute in its opinion. Instead, it noted that the broad language of the indemnification agreement involved in *Tatar* was accompanied by a provision concerning insurance which referred to damage "which may arise out of Subcontractor's work." The court ruled, in effect, that the narrower language of the clause concerning insurance qualified the broad language of the indemnity provision. In addition, the Supreme Court said that despite the many cases cited in support of both sides of the indemnification question,

> "* * * the contractual provisions involved are so varied that each must stand on its own language and little is to be gained by an attempt to analyze, distinguish or reconcile the decisions. 54 Ill.2d at 67.

In the instant case, unlike *Tatar*, no language in the contract qualifies the broad indemnification provision. Nor is there any specific reference to liability arising out of the indemnitee's negligence. However, this court has previously ruled that to uphold an indemnification clause, a specific reference to liability arising out of the indemnitee's negligence is not required. (*Deel v. United States Steel Corp.*, 105 Ill.App.2d 170, 245 N.E.2d 109.) The contract in *Deel* provided that

> "Contractor shall save Owner harmless from any and all claims, * * * growing out of injury to * * * any of Contractor's employees * * * while on or about Owner's premises in connection with any matters relating to the performance of this contract." 105 Ill.App.2d at 184.

(See also *Granite City Steel Co. v. Koppers Co.*, 419 F.2d 1289, 1290 (7th Cir.) and *Spurr v. La Salle Construction Co.*, 385 F.2d 322, 330 (7th Cir.).) Indeed, this court has recognized that in cases where the language of the indemnification agreement is clear, the agreement must apply to the negligence of the indemnitee, or "there would be but little remaining purpose of the promise of indemnity." *Patent Scaffolding Co. v. Standard Oil Co. of Indiana*, 68 Ill.App.2d 29, 41, 215 N.E.2d 1, citing *Northern Pacific Ry. Co. v. Thornton Brothers Co.*, 206 Minn. 193, 288 N.W. 226, 227.

■■■ This case does not involve a situation like that in *Mesker Bros. Iron Co. v. Des Lauriers Column Mould Co.*, 8 Ill.App.3d 113, 289 N.E.2d 223, in which the argument was made that the indemnification provision entitled the indemnitee-contractor to indemnification for all property damage from the installer-subcontractor, even if the materials which the indemnitee provided for installation were bad. There, the court said it would be an extraordinary result to hold that the defendant, on taking a relatively small contract, had agreed to indemnify the plaintiff for the latters' defective manufacture of materials used in the construction of the building without express language to that effect in the contract clause. Apart from the clarity of the language in the instant contract, the fact situation in this case is dissimilar. Here, the installer [Cyclone] provided his own materials and, in our opinion, agreed to an indemnification provision broad enough to cover negligence of Sunbeam's employees while on the latter's premises. (*Halverson v. Campbell Soup Co.* (7th Cir.), 374 F.2d 810.) To refuse enforcement of an indemnity contract requires that the words be susceptible of more than one meaning as read in the context of the entire contract. (*Jeschke v. Mercury Builders, Inc.*, 122 Ill.App.2d 461, 259 N.E.2d 342.) We cannot find any such ambiguity in the terms of this contract. The judgment is therefore affirmed.

Affirmed.

SULLIVAN, P. J., and DRUCKER, J., concur.