AMERICAN PECCO CORPORATION,
Plaintiff,

v.

CONCRETE BUILDING SYSTEMS CO.,
and Gateway Erectors, Inc.,
Defendants.

CONCRETE BUILDING SYSTEMS CO.,
a corporation, Third-Party Plaintiff,

v.

GATEWAY ERECTORS, INC., a corporation, Third-Party Defendant.

CONCRETE BUILDING SYSTEMS CO.,
Third-Party Plaintiff,

v.

CENTRAL CONTRACTORS SERVICE, INC., a corporation, Third-Party Defendant.

CENTRAL CONTRACTORS SERVICE, INC., a corporation, Defendant and Cross-Plaintiff,

v.

GATEWAY ERECTORS, INC., a corporation, Defendant and Cross-Defendant.

No. 72 C 1947.

United States District Court,
N. D. Illinois, E. D.

April 8, 1975.

John J. Coffey, III, and Joseph P. Della Maria, Jr., Rothchild, Barry & Myers, Chicago, Ill., for plaintiff.

Michel A. Coccia and Miles J. Seyk, Baker & McKenzie, Chicago, Ill., for Concrete Bldg. Systems Co.

Thomas W. Conklin, Conklin, Leahy & Eisenberg, Chicago, Ill., for Gateway Erectors.

Robert J. Nolan, and S. Robert Depke, Nolan, O'Malley & Dunne, Chicago, Ill., for Central Contractors.

## MEMORANDUM OPINION AND ORDER

KIRKLAND, District Judge.

This cause comes before the Court on motion of defendant Gateway Erectors, Inc., (Gateway) to dismiss Counts I and II of defendant Central Contractors Service, Inc.'s (Central) cross-complaint.

On November 22, 1971, defendant/cross-defendant, Gateway entered into an agreement with co-defendant, Concrete Building Systems Company, (Concrete) whereby Gateway agreed to furnish labor, material and helper cranes to dismantle two tower cranes allegedly owned by plaintiff, American Pecco Corporation (Pecco). The tower cranes were used by Concrete in construction of buildings at the Campus Green Project at Taylor and Ashland Streets in Chicago, Illinois.

On December 3, 1971, Gateway entered into an agreement with another co-defendant, Central Contractors Service, Inc. (Central). Central agreed, for a stipulated consideration, to lease and supply the necessary crane, crane operator and crane oiler to dismantle the two tower cranes at the Campus Green Project. After part of one tower crane had been connected to the Central crane, preparatory to lowering the part to the ground, the Central crane allegedly began to tip. The operator allegedly dropped the part to the ground to prevent the crane from tipping over. Pecco has filed suit to recover for the damaged tower crane. Central thereupon filed the instant cross-complaint against Gateway.

Central's cross-complaint consists of two counts. Count I is based upon an indemnity provision contained within the December 3, 1971 lease between Central and Gateway. This agreement provides:

"B. THE LESSEE COVENANTS AND AGREES:

7. It is expressly understood and agreed that the Lessee shall be responsible for any and all damage to property, and all injury, damage or disease to or death of any person arising directly or indirectly from or in connection with the use of the leased equipment during the rental period, and the Lessee agrees to indemnify, defend and save the Lessor harmless for any and all loss, claims, or demands arising out of said injury, damage, disease or death."

In Count II, Central seeks indemnity based upon an active/passive negligence theory.

Turning first to Count I, both parties allege that the above quoted indemnity provision is broad enough to cover Central against its own negligence.

The leading case on the subject of indemnity agreements in Illinois is Westinghouse Company v. LaSalle Monroe Building Corporation, 395 Ill. 429, 70 N.E.2d 604 (1947). In that case, the Illinois Supreme Court announced the standard which has been applied in subsequent Illinois cases involving indemnity agreements. The court stated at page 432, 70 N.E.2d at page 606:

"It is a general rule governing the construction of contracts that unless a contract is ambiguous, its meaning must be determined from the words used; and the courts will not, because a more equitable result might be

reached thereby, construe into the contract provisions that are not therein."

\*   \*   \*   \*   \*   \*

"It is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract, (citations) or such intention is expressed in unequivocal terms (citations)."

The indemnity agreement which the court examined in the *Westinghouse* case provided:

"The contractor further agrees to indemnify and hold the owner, the owner's employees and agents, the Architects and Engineers, and the City of Chicago, wholly harmless from any damages, claims, demands or suit by any person or persons arising out of any acts or omissions by the Contractor, his agents, servants or employes in the course of any work done in connection with any of the matters set out in these specifications, and the contractor shall carry at his own expense insurance in a company satisfactory to the owner to cover the aforesaid liabilities."

The court, after examining the agreement, held that the terms of the agreement were not broad enough to indemnify the indemnitee from its own negligence since:

". . . the agreement to indemnify appellant was specifically limited to acts or omissions by appellee, its agents, servants or employees."

Subsequently in Tatar v. Maxon Construction Company, 54 Ill.2d 64, 294 N. E.2d 272 (1973), the Illinois Supreme Court clarified the *Westinghouse* standard, stating at page 66, 294 N.E.2d at page 273:

"We have examined the authorities cited by the parties and many of those collected at 27 A.L.R.3d 663, and conclude that the contractual provisions involved are so varied that each must stand on its own language and little is to be gained by an attempt to analyze, distinguish or reconcile the decisions. The only guidance afforded is found in the accepted rule of interpretation which requires that the agreement be given a fair and reasonable interpretation based upon a consideration of all its language and provisions."

In the recent case of Zadak v. Cannon, 17 Ill.App.3d 74, 307 N.E.2d 605 (1974) the Illinois Appellate Court, applying the *Westinghouse* standard, upheld an agreement indemnifying the indemnitee from its own negligence even though the agreement did not contain a specific reference to liability arising out of the indemnitee's negligence. The agreement provided in relevant part:

". . . seller (Cyclone) also will indemnify and hold harmless the buyer (Sunbeam) of and from any and all suits, claims, liens, damages, taxes or demands whatsoever *arising out of any such work covered by, necessitated or performed under* this order. (emphasis added)

(1) In consideration of the acceptance of this order, seller agrees to defend, protect and save harmless the buyer, or any of its customers, against all suits at law or in equity . . . or for any other actual or alleged injury to property or person, and to defend or assist in the defense of any suit or action which may be brought against the buyer . . . by reason of . . . any other claim of any kind resulting from the purchase, sale or use of the goods, commodities, products and items covered by this order."

The court held that the language of the indemnification was clear and the agreement must apply to the negligence of the indemnitee or there would be little purpose in the indemnity agreement.

Northern States Company, Inc. v. A. Finkl & Sons Company, 8 Ill.App.2d 419, 132 N.E.2d 59 (1956) is a First District decision which is frequently cited as an example of an agreement to indemnify the indemnitee for losses occasioned by

the indemnitee's own negligence. The *Northern States* agreement bears a striking similarity to the agreement involved in the instant cross-complaint. The *Northern States* agreement provided:

"It is expressly understood and agreed that the Contractor shall be responsible for any and all injury due to damage to any person and/or property, including loss of human life arising directly or indirectly from or in connection with work performed or to be performed under this contract, including extra work, and shall hold the Owner harmless of any and all loss or damage from such injury, damage or death."

The court held that parties to the agreement clearly contemplated indemnification of the negligent indemnitee.

■ The agreement upon which Central relies for indemnification provides that Gateway is to be "responsible for any and all damage . . . arising directly or indirectly from or in connection with the use of the leased equipment during the rental period".

This broad agreement has not been qualified by any language to prevent indemnification of a negligent indemnitee. This court holds that the agreement clearly and explicitly contemplates indemnification of Central irrespective of Central's negligence.

The court having found that the lease indemnifies the indemnitee from its own negligence, Gateway next alleges that the indemnification agreement is unenforceable by law, quoting Chapter 29, Section 61 of the Illinois Revised Statutes:

"With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from

that person's own negligence is void as against public policy and wholly unenforceable."

This statute has not yet been interpreted by the Illinois Courts.

Central maintains that the statute is not applicable to it because its only involvement was a lease of equipment, and no mention was made in the lease as to how these materials were to be used. The essence of Central's position is that it engaged only to provide a crane and operator, and that it did not agree to perform any work.

■ It is well settled in Illinois that the court will look to substance and not form when determining the relationship of the parties to an agreement. Maimon v. Telman, 40 Ill.2d 535, 240 N.E.2d 652 (1968).

Central's emphasis on the word "lease" does not alter the fact that a lease is but a particular type of contract.

■ Central provided not only the 90 ton capacity mobile crane to be used in dismantling and moving the tower crane, but also provided the operator for the crane. By providing the crane and operator, Central became in substance, a subcontractor.

Central's position is similar to one who supplies men and equipment to perform part of a construction contract under the direction of the general contractor.

The statute in question voids ". . . contracts or agreements . . . for the construction . . . of a building, [or] structure . . . or other work dealing with construction." Central provided a crane and an operator. The crane was designed to be used in construction activities. Central cannot logically claim it was unaware of the use to which the crane would be put, when the crane was in fact put to a designed use.

■■ The legislature has manifested a clear intent to void exculpatory clauses that purport to hold a person harmless from his own negligence in construction

related activities. Doubts as to who is properly covered by this legislation should be resolved consistent with legislative policy, and with a view to the problem the act was designed to remedy. Those who find themselves objects of legislation understandably attempt to avoid its detrimental effect, but it is the function of the courts to see that express legislative policy is substantially carried out and not defeated on a fine question of semantics. The court holds that the exculpatory clause in this lease is voided by Chapter 29, Section 61 of the Illinois Revised Statutes.

Central attempts to analogize Chapter 29, § 61 of the Illinois Revised Statutes to the Illinois Structural Work Act but the analogy fails. That act imposes liability only on persons having charge of the work. Central cites Warren v. Meeker, 55 Ill.2d 108, 302 N.E.2d 54, for the proposition that liability imposed by the Structural Work Act will not be extended to a mere lessor of equipment; but the Illinois Supreme Court refused to impose statutory liability on lessor because the lessor was not in charge of the work. Huckabee v. Bell & Howell, Inc., 47 Ill.2d 153, 265 N.E.2d 134.

Since the agreement between Central and Gateway contemplated use of a crane and operator at a construction site and since operation of the crane contemplated the dismantling of a construction crane, the agreement falls within Chapter 29, Section 61 of the Illinois Revised Statutes as an agreement dealing with construction. Inasmuch as the indemnification provision relied upon by Central indemnifies it against its own negligence, that provision is void as against public policy, under said Chapter 29, Section 61, and hence unenforceable.

Gateway also moves to dismiss Count II of Central's cross-complaint by alleging that Central, not Gateway, was the actively negligent party.

■■ Illinois law prohibits contribution among joint tortfeasors, but permits a noncontractual claim for indemnity provided there exists a ". . .

qualitative distinction between the negligence of the two tortfeasors . . .." The Chicago and Illinois Midland Railway Company v. Evans Construction Company, 32 Ill.2d 600, 208 N.E.2d 573 (1965). In most cases where this type of indemnity has been allowed, negligence of the indemnitee has been classified as passive and that of the indemnitor as active. The Chicago & Illinois Midland Railway Company v. Evans Construction Company, *supra*. Illinois case law requires that a complaint for indemnity must ". . . disclose some relationship upon which a duty to indemnify may be predicated". Muhlbauer v. Kruzel, 39 Ill.2d 226, 234 N.E. 2d 790 (1968).

■ In Blaszak v. Union Tank Car Co., 37 Ill.App.2d 12, 184 N.E.2d 808 (1962), the Appellate Court ruled that a lessor could maintain a third-party action against its lessee. Union Tank Car was sued by Blaszak for injuries which evolved from a train car Union had leased to Shell Oil Co. Union then brought a third-party action against Shell. In permitting the third-party action, the court said, at page 16, 184 N. E.2d at page 810:

"It does not have to appear with certainty that there will be a recovery over against the third party defendant. It is sufficient that the pleadings show a possibility of recovery. We feel here the pleadings indicate Union might have a right to recover over against Shell any amount it may be required to pay plaintiff."

and at page 18, 184 N.E.2d at page 811:

"The third party complaint asserts that cleaning the car was Shell's responsibility under the leasing agreement. Because Union is the owner of the car, a jury may hold Union liable to plaintiff, although the tank car was in the sole possession and control of Shell. But the jury might also hold, after hearing evidence, that Union's negligence was passive or secondary while Shell was the active or primary tortfeasor. This would allow Union to

recover over from Shell for the Illinois rule against contribution or indemnification among joint tortfeasors does not extend to the situation where the parties were not acting in pari delicto."

This case is applicable here. Each party alleges that the other was actively negligent. The court cannot state as a matter of law which party was actively negligent and which was passive, on the facts presented. The question is properly one for the trier of fact, after hearing the evidence.

Gateway's motion to dismiss Count I of the cross-claim is granted. Its motion to dismiss Count II is denied.