898 F.2d 1286
 16 Fed.R.Serv.3d 1046
 Orvan G. LOVELLETTE, Special Administrator of the Estate of
Jeffrey Lovellette and Chelsea Lovellette, deceased, Nancy
Garrett, Special Administrator for Sonia Lovellette,
deceased, Pat Osmon, Special Administrator for Amber Osmon,
deceased, Plaintiffs,
v.
SOUTHERN RAILWAY COMPANY, a corporation, Defendant/Third
Party Plaintiff-Appellant,
v.
SNAP-ON TOOLS CORPORATION, Defendant/Third-Party Defendant-Appellee.
 No. 89-2026.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 11, 1990.
Decided April 4, 1990.
As Amended on Denial of Rehearing May 7, 1990.
 
 M. Melinda Sanderson, John P. Kujawski, Kujawski & Rosen, Belleville, Ill., and C. Richard Collins, Evansville, Ind., for plaintiffs.
 Timothy S. Richards, Richard M. Roessler, Gundlach, Lee, Eggmann, Boyle & Roessler, Belleville, Ill., and Joshua G. Vincent, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants.
 Before CUMMINGS, WOOD, Jr., and FLAUM, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 This diversity action only involves a dispute over which of two defendants is liable for a tragic train/automobile accident. The merits of the underlying tort suit are not at issue. In a cross-claim, Southern Railway Company ("Southern") seeks contractual indemnity from Snap-On Tools Corporation ("Snap-On") for any claims it may have to pay as a result of this accident. Under FED.R.CIV.P. 12(b)(6), the district court dismissed Southern's cross-claim, and it now appeals.
 
 I. FACTUAL BACKGROUND
 
 2
 On October 15, 1986, an automobile carrying five passengers collided with a train operated by Southern. All five passengers were killed. The collision occurred at a railway crossing as the automobile was traveling north on Oak Street in Mount Carmel, Illinois. The locomotive that struck the car was traveling west, and thus the driver should have seen the train as it approached from his right. Unfortunately, an eight-foot high chain-link fence with panel weave inserts blocked the driver's view on this side. Because we must accept Southern's cross-complaint as true, we assume that the fence was a causative factor in the accident.
 
 
 3
 While the fence was located on Southern's right-of-way, it was actually constructed by the adjoining landowner, Snap-On. In return for monetary consideration, Southern had given Snap-On permission to build and maintain a sewer pipe on Southern's land. Whether this agreement encompassed the construction of the fence is one of the issues in the present dispute. Denominated a license, the agreement provided for Snap-On to indemnify Southern:Said Facility [the sewer pipe] shall be constructed and maintained at the sole risk of Licensee [Snap-On] and Licensee agrees, without regard to negligence on the part of Company [Southern] to save Company or any other corporation controlling, controlled by or under common control with Company wholly harmless from and against all claims, damages, expenses and liability (whether or not such liability has been judicially determined) for loss of life, personal injury or damage to property, resulting from or in any manner attributable to the construction, maintenance, use, operation or presence of the Facility, or to the presence of the equipment or employees of Licensee, on Company's property.
 
 
 4
 Using a number of different theories and invoking the district court's diversity jurisdiction, representatives of the persons who died in the accident brought this suit against Southern and Snap-On. In a cross-claim, Southern seeks contractual indemnity for any claims it may pay as a result of the accident. Southern's claim for contribution because of Snap-On's negligence has been dismissed from the case and is not a subject of this appeal. While this appeal was pending, Southern settled the plaintiffs' claims.
 
 
 5
 Snap-On filed a motion to dismiss Southern's cross-claim. Applying Illinois law, the district court found the contractual indemnity invalid under a state statute prohibiting indemnity against a person's own negligence in construction contracts. See ILL.REV.STAT. ch. 29, para. 61. In a different order, Snap-On's promise to indemnify Southern for any loss arising out of the presence of Snap-On's equipment on Southern's property was held to be inseverable from Snap-On's void promises to indemnify Southern arising out of construction activities. Consequently, the district court dismissed Southern's cross-claim for contractual indemnity. On appeal, Southern does not contest the district court's finding on inseverability.
 
 II. JURISDICTION
 
 6
 Our jurisdiction over this case is not as simple as either party would have us believe. Following the dismissal of its cross-claim, Southern moved for the district court to find no just reason for delay and enter judgment under FED.R.CIV.P. 54(b) so that Southern could appeal. The district court found that its ruling as to Southern's cross-claim would "not likely be mooted" by future developments in the case and granted the motion. The same day it dismissed the plaintiffs' underlying claims because of a pending settlement, the district court entered judgment against Southern and in favor of Snap-On. The dismissal of the plaintiffs' underlying claims was subject to the ability of either party to reopen the judgment if the settlement was not consummated within sixty days.
 
 
 7
 Even though the district court certified the dismissal of Southern's cross-claim as a final judgment, the finality requirements of 28 U.S.C. Sec. 1291 must still be met for appellate jurisdiction to exist. See Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437-38, 76 S.Ct. 895, 900-01, 100 L.Ed. 1297 (1956). Rule 54 allows an appeal from a judgment on a separate claim or on a dispute with a separate party even though the underlying litigation continues in the district court. Nevertheless, finality is still required as to the separate claim for which judgment has been entered. McMunn v. Hertz Equip. Rental Corp., 791 F.2d 88, 90 (7th Cir.1986).[1]
 
 
 8
 The concept of finality is not easily delineated, defined more by notions of justice and judicial economy than by strict rules and guidelines. See Brown Shoe Co. v. United States, 370 U.S. 294, 306, 82 S.Ct. 1502, 1513, 8 L.Ed.2d 510 (1962). The finality requirement partially aims at preventing the waste of appellate resources on unnecessary decisions. See Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 380, 107 S.Ct. 1177, 1184, 94 L.Ed.2d 389 (1987). While not the benchmark of finality, the possibility of a needless expenditure of judicial resources suggests the absence of a final lower court decision.
 
 
 9
 At the time of filing, Southern's appeal could have been rendered unnecessary. When the notice of appeal was filed, the dismissal of the case could have been reopened until the expiration of sixty days or the consummation of the settlement, whichever came first. Nothing in the record informs us that the settlement was in fact consummated before the filing of the notice of appeal. The possibility existed that the dismissal could have been vacated and the case proceeded to trial with a verdict in favor of Southern.[2] Under this scenario, Southern's cross-claim against Snap-On for indemnity would have been moot. We need not decide, however, whether this contingency at the time of filing ruined the finality of the judgment on the cross-claim, because during the pendency of this appeal sixty days passed, thereby removing the contingency.
 
 
 10
 A judgment that becomes final while an appeal is pending can satisfy the finality requirement. For example, the failure to certify a judgment on a separate claim as final under rule 54(b) can be cured where the rest of the claims and parties are dismissed during the pendency of the appeal. Baker v. Limber, 647 F.2d 912, 916 (9th Cir.1981); see also 15 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE & PROCEDURE Sec. 3913 n. 33 (1976 & Supp.1989) (collecting cases). Similarly, we have jurisdiction to consider an appeal from a nonfinal judgment where a subsequent judgment effectively terminates the litigation. King v. Gibbs, 876 F.2d 1275, 1278 (7th Cir.1989). We see no reason not to extend an analogous principle to the present situation. This court's decision on indemnity has become necessary to a resolution of the dispute, and Snap-On has not claimed any prejudice resulted from Southern's arguably premature appeal. A contrary result would only send Southern back to the district court to correct the procedural defect, and this case would appear on our docket some months in the future. See Yockey v. Horn, 880 F.2d 945, 948 n. 4 (7th Cir.1989). Therefore, because Southern's judgment became final beyond doubt during the pendency of this appeal, we find jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 11
 Before we close this jurisdictional discussion, we should explain why this case is not controlled by McMunn. In that case, we held that the requirements of finality are met when a judgment on a cross-claim or third-party claim is only partially contingent, such as where the claim asks for the costs of defense, costs that the complainant will have to bear regardless of its success on the underlying claim. McMunn, 791 F.2d at 90-91. To find the judgment on Southern's cross-claim partially unconditional like the third-party claim in McMunn, the indemnity clause would have to be read as necessarily covering the costs of defense. Because the parties have not squarely presented this issue and such a determination is unnecessary, we decline to base our jurisdictional finding on an interpretation of the indemnity clause's scope.
 
 III. DISCUSSION
 
 12
 The merits of Southern's appeal present two issues for discussion. First, does the contractual indemnity violate the provisions of ILL.REV.STAT. ch. 29, para. 61, which forbid indemnification clauses against one's own negligence in construction contracts?[3] Second, assuming the validity of the indemnity clause, does it cover the present dispute? Under the principles of federalism, we must use and apply Illinois law.
 
 A. Illinois Indemnity Statute
 
 13
 Stripped to its bare essentials, the Illinois statute prevents indemnity against a party's own negligence in construction contracts. To determine what agreements are "construction contracts" within the meaning of the statute, we should construe the statute with a mind toward the problems it was designed to remedy. American Pecco Corp. v. Concrete Bldg. Sys., 392 F.Supp. 789, 794 (N.D.Ill.1975); accord 21 ILLINOIS LAW & PRACTICE Sec. 14, at 468 (1977). No better or more authoritative explanation of the statute's purposes appears than in Davis v. Commonwealth Edison Co., 61 Ill.2d 494, 336 N.E.2d 881 (1975):
 
 
 14
 [W]e consider that section 1 of the indemnity statute serves to protect workers in the industry and the public as well from dangers associated with construction work. The statute would thwart attempts to avoid the consequences of liability and thereby insure a continuing motivation for persons responsible for construction activities to take accident prevention measures and provide safe working conditions.
 
 
 15
 Id. at 499, 336 N.E.2d at 884. Where the indemnitee is not responsible for construction activities or able to prevent accidents, application of the statute would not serve its ends.
 
 
 16
 From these principles, we can infer that the indemnitee must be in a position to avoid negligence or, viewed from a different perspective, to cause harm negligently in construction activities. Cf. Venturi, Inc. v. Austin Co., 681 F.Supp. 584, 590 (S.D.Ill.1988) (where indemnity clause does not purport to indemnify the indemnitee from its own negligent acts, the agreement does not violate the statute); Schuch v. University of Chicago, 87 Ill.App.3d 856, 859, 410 N.E.2d 258, 261, 43 Ill.Dec. 258, 261 (1980) (same). In other words, where an indemnitee has merely accommodated the indemnitor and the indemnitee does not assume responsibility for any construction activities, the operation of the statute is not triggered. It is not enough, as the district court implied, that the indemnitee sign an agreement somehow connected with construction activity.
 
 
 17
 In the instant case, although it does receive a small amount of rent for the land on which the sewer pipe is located, Southern signed the agreement as no more than an accommodation to Snap-On. The contract did not place Southern in a position to avoid negligence in construction activities. The written agreement states that Southern is granting Snap-On "the personal privilege ... to construct and maintain" the sewer. Furthermore, Southern received no benefit from Snap-On's construction activities in improving the land; Snap-On was obligated to pay rent under the agreement regardless of whether the construction took place. Southern's position is not unlike the indemnitee in Fort Wayne Cablevision v. Indiana & Michigan Electric Co., 443 N.E.2d 863 (Ind.Ct.App.1983). Construing a comparable Indiana statute, the Fort Wayne court enforced a clause indemnifying a utility company that had given a cable television company the right to enter upon the utility's poles and string cable television wire. For similar reasons, we find the indemnity clause between Southern and Snap-On to be enforceable despite the Illinois statute.
 
 
 18
 Snap-On points toward certain rights retained by Southern as indicating that the agreement contemplated Southern would render services in connection with the construction of the pipeline. For example, the agreement referred to special engineering studies, field supervision, flagging protection, and specifications that Southern may have had to provide. Also, Southern retained the right to require repairs in the event of a default and to compel changes in location, grade, or construction. Nothing in the agreement, however, obligated Southern to provide any of these services or to take any action in furtherance of the pipeline's construction. Instead, these "services" are more in the nature of rights retained by Southern in the case of Snap-On's faulty construction of the sewer line. By allowing it to alleviate defects in Snap-On's construction activities, the rights reserved by Southern actually serve the purposes of the Illinois indemnity statute. Snap-On's position would deter potential indemnitees from inserting remedial provisions in agreements for fear a court would later find these provisions constituted construction activities, thereby nullifying the indemnity clause. The agreement did not place Southern in a position to cause harm negligently through construction activities.
 
 
 19
 Two cases cited by Snap-On highlight the differences between the rights retained by Southern and the kind of activities to which the statute applies. Both American Pecco Corp. v. Concrete Building Systems, 392 F.Supp. 789 (N.D.Ill.1975) and Folkers v. Drott Manufacturing Co., 152 Ill.App.3d 58, 504 N.E.2d 132, 105 Ill.Dec. 263 (1987) involved indemnity disputes between the lessors and lessees of construction cranes. With a construction crane, the lessor in substance becomes a subcontractor, supplying men and equipment to perform a part of a larger construction contract. American Pecco, 392 F.Supp. at 793. Accordingly, both cases found the indemnity clauses invalid under the Illinois statute. Id. at 794; Folkers, 152 Ill.App.3d at 66-67, 504 N.E.2d at 137, 105 Ill.Dec. at 268. Southern's participation in Snap-On's construction project was far less than the typical crane lessor. Acting in a capacity similar to a lessor, Southern only gave Snap-On permission to come onto its land and construct a sewer pipe, and, to protect itself, Southern retained the right to require certain changes. While the construction crane lessor, as a de facto subcontractor, is in a position to cause harm negligently through construction activities, Southern's obligations under the contract did not place it in a like position.
 
 B. Scope of the Indemnity Clause
 
 20
 Having decided that Snap-On's agreement to indemnify Southern is enforceable under Illinois law, we must now determine whether that agreement covers the present dispute. We agree with Southern that such a determination involves issues of fact, inappropriate for resolution in a FED.R.CIV.P. 12(b)(6) motion to dismiss the pleadings.
 
 
 21
 In support of its case, Snap-On falls back on traditional rules of contract construction. Because the agreement principally involves the construction of an underground sewer pipe, Snap-On concludes that it must exclude the construction of a fence. At oral argument, Snap-On argued that it had no authority under the license to build a fence on Southern's land.
 
 
 22
 We recognize that, as a general rule, construction of a contract is a question of law. Local Union 597 v. Mosbeck Indus. Equip. Inc., 856 F.2d 837, 840 (7th Cir.1988). The general rule, however, does not apply where the contract is ambiguous, requiring resolution of factual issues to construe the contract. Id. Snap-On has agreed to indemnify Southern for liability "in any manner attributable to the construction, maintenance, use, operation, or presence" of the sewer pipe. The broad sweep of the indemnity clause creates ambiguity over its scope, and we cannot resolve these ambiguities without development of the facts. For example, if the fence was built while the sewer pipe was being constructed, this would suggest the fence was part of the construction process and covered by the indemnity clause. Also, the record indicates the fence at one time protected some open settling pits that drained into the pipeline, in which case the fence could arguably be attributable to the maintenance or operation of the sewer pipe. Finally, the fence exactly coincides with the property leased by Snap-On, hinting that there may be a connection between the fence and the presence of the sewer line.
 
 
 23
 Thus, confining our inquiry to the four corners of the agreement as Snap-On insists we must, we cannot say the indemnity clause unambiguously excludes or includes the present dispute from its coverage. On remand, Southern is entitled to show facts that may demonstrate the agreement allowing Snap-On to build a sewer pipe also reaches the construction of a fence.
 
 IV. CONCLUSION
 
 24
 The Illinois indemnity statute does not void Snap-On's agreement to indemnify Southern. Furthermore, on a motion to dismiss the pleadings, we cannot find the indemnity clause unambiguously excludes or includes the construction of a fence. Accordingly, the judgment of the district dismissing count I of Southern's cross-claim is reversed and the case remanded for proceedings consistent with this opinion.
 
 
 
 [1]
 Southern's counsel violated 7TH CIR.R. 34(g) by citing and discussing McMunn at oral argument without first citing this case in a court brief or in a reference to supplemental authority under FED.R.APP.P. 28(j) or 7TH CIR.R. 28(i). Nevertheless, rule 34(g) does not direct us to ignore relevant precedent simply because one of the parties failed to comply with its provisions. In any event, because of the jurisdictional issues it raises, McMunn probably hurts Southern's case more than it helps, and thus Snap-On has not been prejudiced
 
 
 [2]
 Our examination of the record shows that, at the time the plaintiffs' claims were dismissed because of the settlement, the district court had not determined as a matter of law that Southern was liable on any of the counts in the plaintiffs' complaints
 
 
 [3]
 The entire statute reads:
 With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway, bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.
 ILL.REV.STAT. ch. 29, para. 61.