**AETNA CASUALTY & SURETY CO.,**
**Appellant and Cross–Appellee,**

v.

**MARION EQUIPMENT CO., Appellee**
**and Cross–Appellant.**

**No. 4205.**

Supreme Court of Alaska.

May 19, 1995.

Mark A. Sandberg and William M. Wuestenfeld, Sandberg, Smith, Wuestenfeld & Corey, Anchorage, for appellant and cross-appellee.

Daniel A. Gerety, Andrew Guidi, and Donald C. Thomas, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for appellee and cross-appellant.

## OPINION

MOORE, Chief Justice.

## I. *INTRODUCTION*

This case requires us to determine whether an indemnity clause in a lease agreement obligates Marion Equipment Company (Marion) to indemnify Aetna Casualty & Surety Company (Aetna) for its expenses in defending and settling a suit against the Howard S. Wright Construction Company (Wright). The trial court granted summary judgment in favor of Marion. We conclude that the indemnity sought by Aetna is prohibited by AS 45.45.900 and therefore affirm.

## II. *FACTS AND PROCEEDINGS*

This case arises out of an injury sustained by James Crane, a journeyman electrician employed by Cochran Electric Company (Cochran). Cochran was a subcontractor employed by Wright, the general contractor in the construction of the Fifth Avenue Mall in Anchorage. Crane was repairing a construction hoist that was erected, operated and maintained by Wright, and leased by Wright from Marion. A component of the hoist crushed Crane's arm, which was later amputated.

Crane sued Wright, Marion, and the hoist manufacturer, among others. Wright tendered the claim to Cochran and Marion. Cochran accepted Wright's tender, and in turn tendered the defense to Aetna.

Marion was dropped from Crane's suit after winning partial summary judgment which dismissed all negligence claims against it. Aetna took the case to trial, where a jury found Wright 95% liable for Crane's injuries and found Crane 5% comparatively negligent. Crane won compensatory damages of $3,805,-055 and punitive damages of $500,000. Prejudgment interest and attorney's fees threatened to make Wright's total exposure over $7 million, and in post-trial motion practice, Aetna settled with Crane for $6.25 million.

The basis for the current suit is paragraph L of the hoist lease agreement between Marion and Wright, which provided:

> To the fullest extent permitted by law [Marion] shall indemnify and save harmless [Wright], its officers, agents, and employees from and against any and all suits, claims, actions, losses, costs, including attorney's fees, penalties, damages, and loss of use, of whatsoever kind or nature, ... arising out of, in connection with, or incident to [Marion's] performance hereunder.

Aetna seeks indemnification by Marion for the $6.25 million settlement, plus more than $460,000 in attorney's fees that were incurred in Wright's defense.

The trial court entered summary judgment for Marion on two independent grounds. First, the court accepted Marion's argument that since Wright had agreed to put the hoist in working order, operate it, and maintain it, Crane's injury "could not reasonably be said to have originated from, grown out of, or flowed from Marion's rental and delivery of the hoist". Second, the court accepted Marion's contention that the indemnity clause at issue here was rendered unenforceable by AS 45.45.900, which provides:

> A provision, clause, covenant, or agreement contained in, collateral to, or affecting a construction contract that purports to indemnify the promisee against liability ... from the sole negligence or wilful misconduct of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee, is against public policy and is void and unenforceable.

The court held that the lease agreement came within the terms of the statute and that Wright's behavior—which the jury in Crane's suit had deemed reckless and deserving of punitive damages—constituted "wilful misconduct" under the statute.

### III. *DISCUSSION*

Aetna appeals from each of the trial court's rulings. It argues that Crane's injury did in fact "arise out of" Marion's performance under the lease agreement. It also contends that AS 45.45.900 is inapplicable here, or that, if the statute applies, it does not preclude indemnity on these facts. We find it necessary to consider only the question whether AS 45.45.900 prohibits the indemnity Aetna seeks.

■ Marion is entitled to summary judgment if, drawing all reasonable inferences in favor of Aetna, the record fails to disclose a genuine issue of material fact and Marion is entitled to judgment as a matter of law. *Dayhoff v. Temsco Helicopters, Inc.,* 772 P.2d 1085, 1086 (Alaska 1989). The interpretation of a statute presents a question of law, which this court reviews de novo. *City of Dillingham v. CH2M Hill Northwest, Inc.,* 873 P.2d 1271, 1273 n. 2 (Alaska 1994).

### A. *AS 45.45.900 Bars the Indemnity that Aetna Seeks*

#### 1. *AS 45.45.900 applies to the equipment lease*

■ We have never been asked to decide whether AS 45.45.900 applies to leases of construction equipment. However, at least eighteen other states have enacted statutes identical or similar to AS 45.45.900,[1] and the weight of authority from the jurisdictions that have considered this question indicates that the statute does govern such leases.

---

1. *See* Ariz.Rev.Stat.Ann. § 34–226; Cal.Civ.Code §§ 2782, 2782.5; Conn.Gen.Stat. § 52–572k; Ga.Code Ann. § 20–504; Hawaii Rev.Stat. § 431:10–222; Idaho Code § 29–114; Ill.Ann. Stat. ch. 740, para. 35/1; Ind.Code Ann. § 26–2–5–1; Md.Code Ann., Cts. & Jud.Prac. § 5–305; Mich.Comp.Laws Ann. § 691.991; N.M.Stat. Ann. § 56–7–1; S.C.Code Ann. § 32–2–10; S.D.Codified Laws Ann. 56–3–18; Tenn.Code Ann. § 62–6–123; Utah Code Ann. § 13–8–1; Va.Code Ann. § 11–4.1; Wash.Rev.Code § 4.24.115; W.Va.Code § 55–8–14.

This body of authority, coupled with the language of the Marion–Wright lease, convinces us that AS 45.45.900 applies.

*Calkins v. Lorain Division of Koehring Co.*, 26 Wash.App. 206, 613 P.2d 143 (1980), dealt with contractual relationships identical to the case at bar, although it examined an indemnity clause that ran in the opposite direction. In *Calkins,* the Mitchell Brothers Crane Division leased a crane to the Earley Company, which operated and maintained it while dismantling a chemical plant. An indemnity clause in the lease agreement said that Earley would assume liability for all damages caused by the operation of the crane. An Earley employee was injured by the crane's operation, and sued Mitchell. Mitchell tendered a claim to Earley, was rebuffed, and subsequently sued Earley under the indemnity clause. Although the court based its holding on other grounds, it concluded that the indemnity clause violated the policy expressed by Washington's version of AS 45.45.900.[2] *Id.* 613 P.2d at 145.

Two Illinois courts have applied that state's statute[3] to leases of construction equipment. *Folkers v. Drott Manufacturing Co.*, 152 Ill.App.3d 58, 105 Ill.Dec. 263, 504 N.E.2d 132 (1987), factually mirrors *Calkins.* Imperial Crane Services leased a crane to Clark Painting Company. Under the lease, Clark indemnified Imperial for liabilities arising out of the crane's operation. An employee of Clark was injured by the crane and sued Imperial, prompting Imperial to sue Clark under the indemnity clause. The court found that the indemnity provision fell "squarely within the parameters of the statute," basing this holding on the fact that the lease agreement explained that the crane would be "for use in construction." *Id.* 105 Ill.Dec. at 268, 504 N.E.2d at 137.

In the case at bar, the lease contains an effectively identical provision: it obligates Marion to "furnish [the hoist] ... for the construction of ANCHORAGE 5TH AVENUE [mall]." The lease gives further evidence that it is an agreement collateral to a construction contract, by obligating Marion to "be bound by the terms of said MAIN CONTRACT [between Wright and the mall developers] ... in any way applicable to this Subcontract".

An earlier Illinois case is *American Pecco Corp. v. Concrete Building Systems Co.*, 392 F.Supp. 789 (N.D.Ill.1975). In that case, Central Contractors Service leased a crane and provided an operator to Gateway Erectors. A clause in the lease obligated Gateway to assume liabilities arising from the use of the leased equipment. After Central was sued for damages arising from the crane's operation, Central sought indemnity from Gateway. The court disallowed the suit under Illinois' version of AS 45.45.900. *Id.* at 794.

Aetna attempts to distinguish *American Pecco* on the grounds that the lessor in that case provided an operator as well as a crane. *American Pecco*'s holding, however, does not rely solely on the court's conclusion that, "[b]y providing the crane and operator, [the lessor] became in substance, a subcontractor."[4] 392 F.Supp. at 793. The court ruled that "[d]oubts as to who is properly covered by this legislation should be resolved consistent with legislative policy," which the court defined as "a clear intent to void exculpatory clauses that purport to hold a person harmless from his own negligence in construction related activities." *Id.* at 793–94. The court stated, in terms applicable to the case at bar: "The crane was designed to be used in construction activities. Central cannot logically claim it was unaware of the use to which the crane would be put, when the crane was in fact put to a designed use." *Id.* at 793.

---

2. The Washington statute voids certain types of indemnity clauses in agreements "in, or in connection with or collateral to, a contract or agreement relative to the construction ... of, any building." Wash.Rev.Code § 4.24.115.

3. The Illinois statute voids certain indemnity clauses in "contracts or agreements ... for the construction ... of a building [or] structure ...

or other work dealing with construction." Ill. Ann.Stat. ch. 740, para. 35/1.

4. On this point, however, it is relevant to note that both the lease agreement and the indemnity clause at issue here refer to Marion as "SUBCONTRACTOR" and Wright as "CONTRACTOR."

Finally, *Elliott Crane Service v. H.G. Hill Stores*, 840 S.W.2d 376 (Tenn.App.1992), stands in direct opposition to one of Aetna's arguments against applying AS 45.45.900. Aetna argues that the lease agreement here is not "contained in, collateral to, or affecting a construction contract" because, under Alaska law, Marion is not a contractor and cannot sign construction contracts. In the Tennessee case, Elliott leased a crane and provided an operator to Hill, under an agreement in which Hill agreed to indemnify Elliott for liabilities arising out of the "Lessee's operation." A Hill employee was injured and sued Elliott, prompting Elliott's indemnity claim against Hill. The court held that Elliott did not fit Tennessee's statutory definition of a construction contractor, but, quoting *American Pecco*, the court applied Tennessee's version of AS 45.45.900 [5] to the indemnity claim. 840 S.W.2d at 380.

In sum, there is a substantial body of authority which implies that the lease agreement before us is subject to AS 45.45.900. There are also cases which refuse to apply anti-indemnity statutes similar to AS 45.45.900 to leases of equipment used on construction sites. However, we find that these cases are not only factually distinguishable from the case at bar, but that their analysis actually favors applying AS 45.45.900.

In *McMunn v. Hertz Equipment Rental Corp.*, 791 F.2d 88 (7th Cir.1986), the court considered applying Indiana's version of AS 45.45.900 [6] to an indemnity provision in Hertz's lease of a "bobcat loader" to a construction contractor. The lease indemnified Hertz from liabilities arising from the load-er's operation. The lessee contractor used the loader on a construction site. A worker was injured and sued Hertz, prompting Hertz's indemnity claim against the contractor. *McMunn* allows us to evaluate Aetna's argument that if the lease agreement in this case is subject to AS 45.45.900, then any lessor of trucks, cars, or tools whose equipment finds its way onto a construction site will be unwittingly and unfairly deprived of its ability to enter into indemnity agreements.

Judge Posner based the court's ruling on the public policy underlying anti-indemnity statutes of this type, which legislatures have enacted in an effort to increase safety at construction sites.[7] The *McMunn* court decided that the policy behind the statute would be only "weakly engaged" by the facts of that case. 791 F.2d at 93. It reached that conclusion by means of a syllogism which began with the assumption that a negligible number of bobcats leased by Hertz were used in construction jobs.[8] From this the court reasoned that even if the bobcat lease were held subject to the anti-indemnity statute, "Hertz [would] not make appreciably more careful inspections on the off chance that the loader might be put to a use for which it would not have indemnity." *Id.* Because the application of the statute to the lease would not further the statute's goal of promoting worksite safety, *McMunn* concluded that Indiana's anti-indemnity statute should not be held to govern the rental agreement.

While its empirical assumption regarding the uses of a bobcat loader may be questionable, *McMunn*'s analysis is helpful. Follow-

---

**5.** The Tennessee statute voids indemnity clauses that save harmless an indemnitee from its sole negligence in agreements "in or in connection with or collateral to a contract ... relative to the construction ... of a building." Tenn.Code Ann. § 62–6–123.

**6.** Indiana's statute voids indemnity clauses in any agreement "contained in, collateral to, or affecting any [non-highway] construction ... contract" where the clause purports to relieve the indemnitee from sole negligence. Ind.Code Ann. § 26–2–5–1.

**7.** In the days before such anti-indemnity statutes, it was common practice for general contractors to obtain indemnity agreements from their subcontractors. State legislatures believed that such agreements led the indemnitee to be less careful and thereby increased the incidence of accidents at the worksite. The legislative response was the enaction of anti-indemnity statutes. *McMunn*, 791 F.2d at 92 (citing *Fort Wayne Cablevision v. Indiana & Mich. Elec. Co.*, 443 N.E.2d 863 (Ind. App.1983)); *see also* Stein, et al., *Construction Law* § 13.17(2)(b) (1993).

**8.** The court deemed that the loader was typically used for snow removal and highway construction, which was not covered by the statute. 791 F.2d at 93.

ing Judge Posner's reasoning, AS 45.45.900 should be applied to void indemnity clauses in equipment lease agreements if such a legal rule would advance the purposes of the anti-indemnity statute by inducing careful inspection and use of the leased equipment.

Unlike *McMunn*, the indemnitee in the instant case is not the equipment supplier, Marion, but the general contractor and a party to the construction contract, Wright. We believe that where the indemnity clause runs in this direction, applying AS 45.45.900 to the indemnity clause is consistent with the legislative goal of increasing safety at construction sites.

Moreover, in the case at bar, the equipment leased was a construction hoist which was designated by the terms of the lease agreement for use in the construction of the Fifth Avenue Mall. It is useful to note that while Judge Posner considered only those indemnity clauses which ran in favor of the equipment lessor, he hypothesized that "where the equipment supplied to the party to the construction contract is specialized to ... construction or otherwise clearly intended for it," the statutory policy would be served by holding the agreement subject to the indemnity bar. *McMunn*, 791 F.2d at 93. Therefore, even if the indemnity clause at issue ran in favor of Marion, this case would be identical to Judge Posner's hypothetical, and the "safety incentives of the supplier might be enhanced by forbidding indemnity." *Id.*

In sum, although *McMunn* held that the lease agreement at issue was not subject to Indiana's anti-indemnity statute, the opinion leads us to conclude that in order to give effect to the purpose of AS 45.45.900, we must apply the statute to the lease at issue. *McMunn* also answers Aetna's "floodgates" argument, which implies that there is no principled way to apply AS 45.45.900 to leased equipment without extending the holding to every "truck rented from Hertz [and every] hammer rented from Stephan's Tool Rental." Assuming the validity of this concern, it is surely satisfied in cases like the

present where the equipment is "specialized to ... construction or otherwise clearly intended for it." *McMunn*, 791 F.2d at 93; *see also American Pecco*, 392 F.Supp. at 793 (holding lease subject to anti-indemnity statute because equipment "was designed to be used in construction activities ... and was in fact put to [that] designed use").

In the face of the authority discussed above, Aetna relies on a Michigan case which it claims is the "only reported decision which squarely addresses this issue." In *Pritts v. J.I. Case Co.*, 108 Mich.App. 22, 310 N.W.2d 261, 267 (1981), the Mi–Jack Products Company leased a travel lift to American Prestressed Concrete Company (APC), a manufacturer of prestressed concrete components. The lease agreement obligated APC to indemnify Mi–Jack for liabilities arising out of the use of the lift. After "an industrial accident" involving the lift, *id.* 310 N.W.2d at 263, APC argued that indemnity was prohibited by Michigan's version of AS 45.45.900.[9] The court refused to apply the statute to "suppliers of those engaged in construction." *Id.* 310 N.W.2d at 267.

Another case refusing to apply an indemnity to a lease of construction equipment is *Orville Milk Co. v. Beller*, 486 N.E.2d 555 (Ind.App.1985), which involved the rental of space heaters by a construction contractor who used them to warm part of a building under construction. The heaters caused the carbon monoxide poisoning of a worker, who was injured after he became dizzy and fell. *Id.* at 558–59. The lease agreement indemnified the lessor from liabilities arising from the heaters' operation. The contractor attempted to avoid indemnification by arguing that Indiana's version of AS 45.45.900 voided the indemnity agreement. The court summarily refused to apply the statute. *Id.* at 561.

We decline to follow *Pritts* and *Beller*. First, as the trial court in the instant case observed, the *Pritts* court apparently struggled with what it perceived to be a dearth of legal authority on this subject: "[the defendant] has not cited, nor can we find, any

---

9. Like Washington and Tennessee, Michigan voids certain indemnity clauses in agreements "in, or in connection with or collateral to, a

contract or agreement relative to the construction ... of a building." Mich.Comp.Laws Ann. § 691.991.

cases in which the statute has been held to apply to equipment suppliers." 310 N.W.2d at 267. We face no such dilemma here, as shown by the authority discussed above. Second, both cases are factually distinguishable from the case at bar. Although its description of the facts is ambiguous, *Pritts* implies that the leased travel lift was in use at an industrial site rather than on a construction project. *Id.* The heaters leased in *Beller* were not specifically designed for use in construction, as was the hoist in the case before us. Moreover, the lessor in *Beller* was not told of the purpose for which the equipment was rented, 486 N.E.2d at 557, whereas the lease agreement in the case at bar explicitly stated that the hoist would be used in construction. Third, to the extent that these cases support Aetna's contention that AS 45.45.900 does not apply to "suppliers of those engaged in Construction," we decline to adopt such a rule.

Our analysis of the case law, the lease at issue here, and the purpose of AS 45.45.900 lead us to conclude that the Marion–Wright lease is governed by the statute. It now remains for us to determine whether the statute renders the indemnity agreement in the lease void and/or unenforceable.

### 2. *AS 45.45.900 renders Aetna's claim for indemnity unenforceable*

■ The indemnity clause at issue is unenforceable if it purports to indemnify Wright "from the sole negligence or wilful misconduct of [Wright] or [Wright's] agents, servants or independent contractors who are directly responsible to [Wright]." AS 45.45.900. We conclude that Aetna is attempting to seek indemnity for an injury that resulted from Wright's wilful misconduct and sole negligence. Thus, on both of the grounds set forth in AS 45.45.900, we hold the indemnity clause in this case unenforceable.

The trial court held the indemnity clause unenforceable because it concluded that Aetna was seeking indemnity for Wright's wilful misconduct. The court based this conclusion on the fact that the jury in the *Crane* lawsuit found that Wright's behavior constituted grounds for punitive damages. In the words of the jury instruction, Wright's conduct was found to be "the result of maliciousness or hostile feelings toward the plaintiff, or ... undertaken with reckless indifference to the interests, rights, or safety of others." Based on this finding of reckless indifference, the lower court ruled that Wright's actions were the equivalent of wilful misconduct.

■ Aetna argues that wilful misconduct is a term inapplicable to Wright because it describes only those tortfeasors who intend harm. We disagree. It is true that "[t]he phrase 'wilful misconduct' implies intent. However, the intention relates to the misconduct, not to the result, and, therefore, an intent to injure need not be shown." *Brockman v. Bell,* 78 Ohio App.3d 508, 605 N.E.2d 445, 449 (1992).

A number of Alaska cases inferentially support the lower court's holding that actions undertaken with "reckless indifference to the interests, rights, and safety of others" constitute wilful misconduct. In *Van Biene v. ERA Helicopters, Inc.,* 779 P.2d 315 (Alaska 1989), we held that allegations of wilful misconduct were insufficient to make out a cause of action for an intentional tort. *Id.* at 318–19. In *Korean Air Lines Co. v. State,* 779 P.2d 333 (Alaska 1989), we noted that a defendant had been found guilty of wilful misconduct by a jury following this instruction:

> The defendants' behavior is wilful misconduct if they intentionally performed or failed to perform some act or series of acts either:
>
> (1) with knowledge that such act or omission would probably result in injury or damage, or
>
> (2) in a manner from which could be implied *reckless disregard* of the probable consequences of the act or omission.

*Id.* at 337 & n. 3 (emphasis added). Finally, in *Borg–Warner Corp. v. Avco Corp.,* 850 P.2d 628 (Alaska 1993), we termed "persuasive" the view that in comparative negligence jurisdictions like Alaska, "wilful misconduct" should be considered a category of miscon-

duct that "falls short of being intentional." [10] We held that intentional tortfeasors are those who act with specific intent to cause an injury. We classified "wilful and wanton" actors as unintentional tortfeasors. *Id.* at 633.

What we have implied in the aforementioned cases, we hold explicitly today in the context of AS 45.45.900: "wilful misconduct" means volitional action taken either "with a knowledge that serious injury to another will probably result, or with wanton and reckless disregard of the possible results." *Rost v. United States,* 803 F.2d 448, 450 (9th Cir. 1986) (quotation omitted). Because Wright was found by a jury to have acted with reckless disregard of Crane's interests and safety, Wright's injurious behavior is properly termed wilful misconduct. Consequently, AS 45.45.900 forbids the indemnity Aetna seeks.

Aetna cites *Borg–Warner* for the proposition that "a comprehensive system of comparative negligence should allow for the apportionment of damages in all cases involving misconduct which falls short of being intentional." 850 P.2d at 633 n. 14. From this Aetna infers that AS 45.45.900 should be read to "prohibit indemnity only for tortfeasors who ... intended harm." This inference is unwarranted, however. The case at bar does not concern Alaska's "comprehensive system of comparative negligence;" rather, this case requires us to construe AS 45.45.900, an anti-indemnity statute. In the statute, the legislature chose to disallow indemnification in construction-related contracts where the indemnitee is guilty of "wilful misconduct"—a term with specific legal meaning that does not require intent to harm. The legislature's authority to enact this provision is not in doubt, and thus we are bound to give effect to this provision in light of our precedents concerning the meaning of the term "wilful misconduct."

Aetna also argues that because liability for punitive damages can be insured against in Alaska, activity that gives rise to punitive damages should also be subject to indemnification. While it is true, as Aetna notes, that a company can insure itself against punitive damages, it is equally true, under AS 45.45.900, that except in an insurance contract no party in a construction-related contract may obtain indemnity for its "sole negligence or wilful misconduct." In other words, Aetna's argument simply ignores the fact that the parameters of indemnity law have been narrowed by the legislature in a way that the parameters of insurance law have not. Since we are obligated to respect this legislated distinction, we must reject Aetna's interpretation of AS 45.45.900.

Finally, even if Wright had not engaged in wilful misconduct, we find that AS 45.45.900 would disallow indemnity in this case. Alaska Statute 45.45.900 voids indemnity clauses in construction-related contracts when they purport to indemnify the promisee against liability from the sole negligence "of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee." In this case, the jury found Crane's accident 95% attributable to the negligence of Wright and 5% attributable to the negligence of Crane, who was employed by Wright's subcontractor, Cochran. Since Crane was employed by a subcontractor of Wright, he falls into the category of "[Wright's] agents, servants or independent contractors who are directly responsible to [Wright]." [11] AS 45.45.900.

**B. *The Trial Court Did Not Abuse Its Discretion in Awarding Marion 20% of Its Attorney's Fees***

Marion cross-appeals the lower court's decision to award Marion 20% of its attorney's fees. An award of attorney's fees is reviewed for abuse of discretion. *Irving v. Bullock,* 549 P.2d 1184, 1190 (Alaska 1976).

**10.** *Borg–Warner* involved the interpretation of former AS 09.16.010(c), which barred contribution in the case of "any tortfeasor who has intentionally caused an injury."

**11.** We reserve decision on the question whether the term "sole negligence" in the statute relates only to the negligence of the promisee, those for whom the promisee is responsible, and the promisor, or whether third-party negligence is also meant to be addressed.

In this case, where the prevailing party received no money judgment and the case did not go to trial, the court awarded Marion 20% of its total fees pursuant to Alaska Civil Rule 82. The court "[saw] no reason to vary from the presumptive Rule 82 formula." Marion argues that an enhanced award is compelled by "the complexity of the facts and issues, the extremely high monetary stakes involved, and the underlying need to vindicate the public policy announced in [AS 45.45.900]." Marion cites no authority for the proposition that any of these factors compel an enhanced fee award, however. We find no abuse of discretion and therefore affirm the award.

## IV. *CONCLUSION*

Because the indemnity Aetna seeks is prohibited by AS 45.45.900, we AFFIRM summary judgment for Marion. We also AFFIRM the trial court's award of attorney's fees.